# IN THE OREGON TAX COURT

## JOSEPH HYDRO ASSOCIATES, LTD.
*v.*
## DEPARTMENT OF REVENUE
(TC 2504 and 2648)

John Doran, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, represented plaintiff.

Marilyn Harbur, Assistant Attorney General, Tax Section, Department of Justice, Salem, represented defendant.

Decision for defendant rendered April 12, 1988.

**CARL N. BYERS, Judge.**

This case concerns a narrow question of valuation associated with plaintiff's hydroelectric facility. The case has been submitted to the court on stipulated facts. The court has been assisted in its task by the briefs and oral arguments of the parties.

The operative facts are as follows: Plaintiff is an Oregon limited partnership that owns and operates a facility for the generation and transmission of electrical energy ("the Facility") located in Wallowa County near Joseph, Oregon. The Facility consists of three hydroelectric power stations and associated equipment, including diversion and intake structures, a power canal, real estate, rights-of-way, a Forest Service special use permit, penstocks, powerhouses and interconnection facilities connecting the powerhouses with the existing transmission facilities of the plaintiff's customer, Pacific Power & Light Co.

Plaintiff obtains water for its turbine generators from the Wallowa Valley Improvement District No. 1 ("the District") which is an irrigation district providing water to its members. By written agreement, the District has granted to plaintiff "the exclusive right to generate electric power" using the water in the District's irrigation system. In exchange, plaintiff pays the District 10 percent of its gross revenues from the sale of power generated by the facilities located on the District's system. Plaintiff taps into the District's canal system at three different points, drawing off water to turn its turbine generators and then returns the water to the canal system.

The parties have stipulated that the capitalized income approach, using the discounted cash flow method, affords the most reliable indicator of value of the Facility as of January 1, 1986, and January 1, 1987, the assessment dates in question. The parties have also stipulated as to the calculations found in Exhibits D and E attached to the stipulation. Those calculations characterize the payments which plaintiff makes to the District as deductible operating expenses. Defendant agrees that the payments are deductible by plaintiff in calculating the value of the Facility. However, defendant maintains that the water power used by plaintiff constitutes property which is taxable to plaintiff as the "user" under ORS 308.510(1). Defendant has, therefore, calculated a separate value based on the amount of the payments made by plaintiff to the District and added that separate value to the indicated value of the Facility. Plaintiff, although agreeing that defendant's calculations are correct, does not agree with the value or that the value should be added to the Facility's value obtained by the income approach.

This dispute raises three issues:

1. Does plaintiff's use of water constitute the use of a property subject to taxation?

2. If the use is of a taxable property, is the value of that property included in the true cash value of the Facility as calculated or must it be added to such value?

3. If the value of the water property must be added to the value of the Facility, what is the value that should be added?

■ The nature of plaintiff's business, generating electric power, subjects it to assessment under the provisions of ORS 308.515 and the related assessment statutes. ORS 308.510 defines property for purposes of those statutes. Subsection (1) of that section indicates:

> " 'Property,' * * * includes all property, real and personal, tangible and intangible, used or held by a company as owner, occupant, lessee, or otherwise, for or in use in the performance or maintenance of a business or service or in a sale of any commodity, * * * and includes but is not limited to * * * water powers * * *."

The term "water power" is generally defined to mean:

> "The water power to which a riparian owner is entitled consists of the fall in the stream when in its natural state, as it passes through his land, or along the boundary of it; or, in other words, it consists of the difference of level between the surface where the stream first touches his land, and the surface where it leaves it." Black's Law Dictionary 1762 (4th ed. 1957).

> "This natural power is as much the subject of property as is the land itself of which it is an incident." *McCalmont v. Whitaker,* 3 Rawle 84, 90, (Pa), 23 AmDec 102 (1831); *Rhodes v. Whitehead,* 27 Tex 304, 309, 84 AmDec 631 (1863).

■ The court finds that the grant to plaintiff by the District of the right to use the water to generate electric power is a "property" subject to taxation under ORS 308.510(1). By specifying "water powers" the legislature has recognized this incident of land ownership as an intangible property subject to taxation.

Plaintiff argues that the only thing it is purchasing is the "potential mechanical energy present" in the water which is no different than other forms of energy such as coal, oil or natural gas. However, the water power that plaintiff purchases is not like coal, oil or gas which is consumed in its use. Water power exists by virtue of the combination of different land levels, water and gravity. So long as those three elements are present, this natural power will exist. Plaintiff pays for the use of that power on an annual basis. If plaintiff's agreement with the District was terminated, the District would have the right and ability to use such power itself or sell it to others.

Is the value of the water power used by plaintiff included in the true cash value of the Facility?

The parties have stipulated to the fair market value of the Facility. Plaintiff maintains that the value of the Facility represents the value of all property used by it. Therefore, plaintiff argues, if the water power is taxable to plaintiff, it must be included within the stipulated value. Such would result in a reallocation of, not an increase in, the assessed value. In opposition, defendant maintains that the water power is taxable in addition to the calculated value of the Facility. Defendant argues that the income measures only the value of the Facility. By deducting the cost of the water power as an expense, the value of that property is removed from the indication of true cash value arrived at by discounting the cash flow.

This is a theoretical dispute on which there appears to be two schools of thought. One school holds that deducting lease payments of leased property removes the value of that property from the indication of value arrived at by the income approach. Those who adhere to this school would attempt to treat the leased property as if it were owned by adjusting the deductions from gross revenues. Typically, the adjustments are made by adding the lease payments back into the income, then deducting amounts for depreciation as if the property were owned and also adjusting for the effect of income taxes since lease payments are 100 percent deductible.

The other school of thought makes no adjustment to the income indicator of value on the theory that the net income, or net cash flow, in fact reflects the value of all of the

property used to produce that income. Ring and Boykin, *The Valuation Of Real Estate,* 434-35 (3rd ed. 1986).

Reason draws the court to the conclusion that the value of the water power used by plaintiff must be added to the calculated value of the Facility. The payments made by plaintiff for the water power, appropriately capitalized, represent the value of that property just as the capitalized net cash flow represents the value of the Facility. Deducting the payments made for use of the water power removes that element of value in the income approach attributable to the water power. In the court's view, it is no different than if plaintiff rented its penstocks or transmission lines and deducted the rental payments for those facilities. The value indicated by the income approach in that instance would not reflect the full value of the penstocks or the transmission lines. It must be kept in mind that, for purposes of ad valorem taxation, it is the full value of the property being used that is subject to taxation.

■ "The value of property is in its use. The state can tax that value to the person who, for the tax period, is using it. If the possessor is making a full use of the property, the value to him is exactly the same as it would be were he the owner. In effect, the lessee is the owner for each tax year he remains in possession under his lease, subject to any diminution in value resulting from restrictions made applicable to him which would not be applicable to an owner in fee." *R. L. K. and Co. v. Tax Commission,* 249 Or 603, 606, 438 P2d 985 (1968).

The logic of the court's conclusion is made more clear by considering what would be the outcome if plaintiff had purchased the intangible property right outright from the District. If plaintiff owned the water power, it would make no payments to the District and would therefore receive no expense deduction. This would result in a higher net cash flow and a higher indicated true cash value for the Facility. In that circumstance, plaintiff would own a property right which, because it arises from the combination of natural elements, does not depreciate. If plaintiff discontinued operation of its electrical facility, it could sell that property right to others. The important point to keep in mind, however, is that plaintiff's net cash flow would be substantially higher because it would then reflect the value of the water power owned and used by plaintiff in the generation of electric power.

In summary, the water power is a separate property being used by plaintiff. Since the payments which plaintiff makes for its use are deducted as an operating expense in the income approach, the resulting indicated value does not include the value of the water power. Hence, the value of the water power must be separately calculated and added to the value of the Facility derived by the income approach.

The final question that must be answered is what is the value of the water power being used by plaintiff?

In the court's view, the agreement between the District and plaintiff is in the nature of a lease. Plaintiff uses the water power in exchange for ten percent of its gross revenue. The agreement is for an indefinite term. Although it contains conditions for termination, those conditions are not relevant here.

■    If plaintiff's interest is in the nature of a lessee's interest, and the court believes it is, the best indication of value is the current market value of the lease payments. In *P. G. E. Company v. Tax Com.*, 249 Or 239, 437 P2d 827 (1968), the court was required to determine the proper method for valuing and taxing PGE's interest in certain tribal lands. Those interests included nonpossessory flowage and other easement interests as well as possessory interests. The court there stated:

> "Although PGE's interest in the tribal lands is denominated an easement, and for a large part is nonpossessory interest, we think the rules for the valuation of possessory interests in real property are fully applicable." *Id.* at 251.

In responding to PGE's arguments that the assessed value was for " 'something in which the utility has no investment and no earning power and which has no compensable value upon sale or condemnation,' " the court stated: "PGE confuses the value of its right to use the tribal lands with its equity in its interest in said lands." *Id.* at 252. The court went on to point out that while PGE could obtain an equity interest in the land, the amount of its equity is irrelevant to the value for purposes of taxation. The value that is to be used for purposes of taxation is the value of the use.

The court finds that the present value of the anticipated payments by plaintiff to the District for the use of the

water power is the best indication of the value of the water power for purposes of ad valorem taxation.

Based upon the above findings of fact and conclusions of law, and in accordance with the stipulation of the parties, the court finds that the true cash value of the Facility as of January 1, 1986, is $4,895,352 and the value as of January 1, 1987, is $4,286,485. Costs to neither party.